ENCYCLOPAEDIA BRITANNICA EDUCATIONAL CORPORATION, et al., Plaintiffs,

v.

C.N. CROOKS, et al., Defendants.

No. Civ–77–560C.

United States District Court, W.D. New York.

March 10, 1983.

---

1249

Raichle, Banning, Weiss & Halpern, Buffalo, N.Y. (R. William Stephens, Buffalo, N.Y., of counsel), and Sargoy, Stein & Hanft, New York City (Burton H. Hanft, and Jeffrey A. Rosen, New York City, of counsel), for plaintiffs.

Ellis, Kustell & Mullenhoff, Buffalo, N.Y. (Carl B. Kustell, Buffalo, N.Y., of counsel), for defendants.

CURTIN, Chief Judge.

On June 21, 1982, this court determined that defendants' highly organized and systematic practice of making off-the-air videotapes and derivative copies of plaintiffs' televised copyrighted works did not constitute fair use under the copyright laws. *Encyclopaedia Britannica Educational Corp. v. Crooks,* 542 F.Supp. 1156 (W.D.N.Y.1982). The remaining issues to be determined in this case concern defendants' motion to allow temporary videotape copying and use of plaintiffs' works, plaintiffs' motion to reconsider their request for an award of costs and attorneys' fees, and various issues involving damages and the number and types of infringements committed by BOCES.

*Temporary Use*

In the court's order of June 21, 1982, plaintiffs' request for a permanent injunction prohibiting defendants from copying any future copyrighted works of plaintiffs was granted. *Encyclopaedia Britannica Educational Corp. v. Crooks, supra* at 1188. At that time, the court noted that some

limited or temporary use of plaintiffs' televised works might be considered fair use under the Copyrights Act of 1976 [the New Act], 17 U.S.C. § 107, and defendants now seek an order amending the injunction to allow for such temporary use.

The House Report on the 1976 Copyrights Act stated that off-the-air videotaping for classroom use was a difficult issue to resolve and that the Judiciary Committee believed

> that the fair use doctrine has some limited application in this area, but it appears that the development of detailed guidelines will require a more thorough exploration than has so far been possible of the needs and problems of a number of different interests affected, and of the various legal problems presented. Nothing in section 107 or elsewhere in the bill is intended to change or prejudice the law on the point.

H.R.Rep. No. 94–1476, 94th Cong., 2nd Sess. 71–72 (Sept. 3, 1976), *reprinted in* [1976] U.S.Code Cong. & Admin.News 5659, 5685. Subsequently, the House Subcommittee on Courts, Civil Liberties and the Administration of Justice, issued guidelines concerning off-the-air videotaping for educational use, which suggest that off-the-air videotaping be permitted for a limited period of time. Under these guidelines, videotape copies may be kept for 45 calendar days, after which time the tapes are to be erased. Off-the-air videotapes may only be made at the request of a teacher and can only be used for "relevant teaching activities" during the first 10 school days of this time period. After this time, the tapes may only be used for evaluation purposes. Additionally, a videotape copy may be used once in the classroom by individual teachers "and repeated only once when instructional reinforcement is necessary." *Guidelines for Off-the-Air Recording of Broadcast Programming for Educational Purposes*, Cong.Rec. § E4751, October 14, 1981.

BOCES maintains that a temporary use time period encompassing one school year would be more appropriate but also suggests that the 45-day period under the Sub-committee guidelines or a one-month temporary-use period would be acceptable alternatives. Plaintiffs object to any modification of the injunction. In this respect, plaintiff Time-Life never permitted temporary off-the-air videotape use of their works, and plaintiff Learning Corporation of America no longer permits such use. Plaintiff Encyclopaedia Britannica also states that it will no longer permit BOCES to videotape its works off-the-air for temporary use.

■ When a claim of fair use is asserted, the court weighs and considers the merits of the claim by applying the suggested criteria found in section 107 of the New Copyrights Act. *MCA, Inc. v. Wilson*, 677 F.2d 180, 182 (2d Cir.1981). These factors are set forth in the statute as follows:

1) The purpose and character of the use, including whether such use is of a commercial nature or is for non-profit educational purposes;

2) The nature of the copyrighted work;

3) The amount and substantiality of the portion used in relation to the copyrighted work as a whole; and

4) The effect of the use upon the potential market for or value of the copyrighted work.

■ In examining defendants' claims, it is helpful to begin by examining the last factor, "the effect of the temporary use upon the potential market for or value of the copyrighted work," or, more succinctly, "harm." It is significant that all of the plaintiffs' works are available for rental or lease for short or long-term periods in both film and videotape form. In fact, these works may be rented for as short a time as one to three days. *See Encyclopaedia Britannica Educational Corp. v. Crooks, supra* at 1171. Additionally, the court notes that there are many types of licensing agreements permitting educational institutions to duplicate plaintiffs' works, and these licensing agreements have previously been described in detail, *Encyclopaedia Britannica Educational Corp. v. Crooks, supra* at 1164–1166. For these reasons, any temporary use

by BOCES of plaintiffs' copyrighted works would interfere with the marketability of these works, and the cumulative effect of this temporary videotaping would tend to diminish or prejudice the potential short-term lease or rental market for these works. *See Encyclopaedia Britannica Educational Corp. v. Crooks, supra* at 1171.

Similarly, in looking to the nature of the copyrighted work, the availability of plaintiffs' work in film or videotape form for short periods of time is an important consideration. This factor generally refers to the type of material used and whether distribution would serve the public interest. As explained in the court's decision of June 21, 1982, distribution may be in the public interest when the information is difficult to obtain. If a work is unavailable through "normal channels," there may be " 'more justification for its reproduction than in the ordinary case' .... " S.Rep. No. 94–473, 94th Cong., 1st Sess., 64 (Nov. 20, 1975), supra at 1177. In this case, it is evident that copies of plaintiffs' works may be obtained for short periods through normal channels, and this factor does not shift any weight towards defendants' fair use contentions.

Concerning the "substantiality" factor, defendants are only interested in obtaining a complete copy of plaintiffs' works, which again could be supplied by the plaintiffs. In examining the last factor, the "purpose and character of the use," BOCES' general purpose for using plaintiffs' works is to achieve laudable educational objectives. Yet, defendants' specific purpose in seeking temporary use of plaintiffs' works is to engage in "time shifting"—the ability of teachers and students to view television programs irrespective of when the program was broadcast by a television station. While time shifting may be more convenient for defendants, fair use is a concept based upon reasonableness. *Meeropol v. Nizer,* 560 F.2d 1061, 1070 (2d Cir.1977), cert. denied, 434 U.S. 1013, 98 S.Ct. 727, 54 L.Ed.2d 756 (1978). Reasonableness in this context does not inherently include convenience, and the Senate Report on the 1976 Copyrights Act stated: "The Committee

does not intend to suggest, however, that off-the-air recording for convenience would under any circumstances be considered 'fair use.' " S.Rep. No. 94–473, 94th Cong., 1st Sess., 66 (Nov. 20, 1975).

Under these circumstances, it is not reasonable to permit defendants to engage in copying and using plaintiffs' works for a limited period of time when these same copyrighted works are readily available from the plaintiffs for a limited period of time.

It should be stressed that this determination affects only the defendants' practice of copying plaintiffs' copyrighted and televised works. Although the court finds that limited temporary use does not apply to plaintiffs' televised works in this instance, the court is aware that there are many different off-the-air rerecord rights attached to the many different kinds of programs broadcast by television stations. The court's finding that defendants' request for temporary use is not fair use of plaintiffs' works is intended only to affect the parties in this case and is based solely on the law and the facts as presented in the instant action.

*Costs and Attorneys Fees*

In the order of June 21, 1982, the court requested further briefs from the parties concerning the plaintiffs' request for costs, and plaintiffs have also moved the court to reconsider the court's refusal to award them attorneys' fees in this case. Under the New Copyrights Act, the award of costs is discretionary, 17 U.S.C. § 505; however, this action is brought under the Copyrights Act of 1909 [the Old Act]. Under section 116 of the Old Act, the award of costs to the prevailing party is mandatory. *Marks v. Leo Feist, Inc.,* 8 F.2d 460, 461 (2d Cir.1925); *H.M. Kolbe Co. v. Armgus Textile Co.,* 315 F.2d 70 (2d Cir.1963). The fact that this action was initiated under the Old Copyrights Act and the case decided after the New Copyrights Act came into effect on January 1, 1978, does not provide the court with any discretion in this matter. *See, e.g., Boz Scaggs Music v. KND Corp.,*

491 F.Supp. 908, 912 n. 4 (D.Conn.1980). Accordingly, plaintiffs are entitled to costs in this action pursuant to 17 U.S.C. § 116.

■ Plaintiffs' motion for reconsideration of their request for attorneys' fees is primarily based upon the belief that defendants never made a good faith effort to comply with the copyright law and that although plaintiffs' copyrights were prominently displayed, *Encyclopaedia Britannica Educational Corp. v. Crooks, supra* at 1184 and 1184 n. 22, BOCES never even inquired about what copying practices were acceptable under the law. Plaintiffs further contend that defendants engaged in blatant copyright infringement and that only the reproduction methods used by BOCES can be characterized as novel.

The order of June 21, 1982, explained that this case presented novel issues based on recent technological advancements as well as unsettled issues of law and fact. *Id.* at 1186–87. In considering plaintiffs' claims of bad faith,

a determination of bad faith depends not only on whether a defendant deliberately used copyrighted material which it had been denied permission to use, but also on whether the defendant genuinely believed that, nevertheless, it had the legal right to make such use. Put another way, the issue of good faith or bad faith in this context depends in large part on the substantiality of the defense offered as justification for the offending acts.

*Roy Export Co. v. Columbia Broadcasting System,* 503 F.Supp. 1137, 1155 (S.D.N.Y. 1980). Although defendants' constitutional contentions and theories of fair use and estoppel were ultimately found to be without merit, the defense presented was not insubstantial. The issue of copyright and off-the-air videotaping of television programs has certainly been an unsettled area of law since the commencement of the instant litigation. *See, e.g., Universal City Studios, Inc. v. Sony Corporation of America,* 480 F.Supp. 429 (C.D.Cal.1979); and *Universal City Studios, Inc. v. Sony Corporation of America,* 659 F.2d 963 (9th Cir. 1982), *cert. granted,* —— U.S. ——, 102 S.Ct. 2926, 73 L.Ed.2d 1328 (1982).

Further, attorneys' fees in copyright cases have been sparingly used, *MCA, Inc. v. Wilson, supra* at 187; *Orgel v. Clark Boardman Co.,* 301 F.2d 119, 122 (2d Cir. 1962), and have previously been awarded only where it appears that the defendant has resisted a valid claim with a defense that is so lacking in merit as to present no arguable question of law or fact, or where it appears that the defense was designed to annoy or harass the plaintiff. *Morser v. Bengor Products Co.,* 283 F.Supp. 926, 929 (S.D.N.Y.1968). Under these circumstances, the substantiality of the defense presented by BOCES mitigates against an award of attorneys' fees to the plaintiffs in this case.

### Damages

■ Plaintiffs seek minimum statutory damages of $250.00 for each copying, vending, and performance infringement committed by BOCES under the Old Copyrights Act, 17 U.S.C. § 101(b). Defendants contend that the court should award damages based upon their perception of actual damages, or "just" statutory damages. They suggest an amount of $250.00 for each of the 19 works in suit. Plaintiffs have argued that actual damages are incalculable, and since plaintiffs have offered no proof of actual damages and because the record does not reveal defendants' actual profits, statutory damages must be awarded. *Robert Stigwood Group Ltd. v. O'Reilly,* 530 F.2d 1096, 1101 n. 11 (2d Cir.1978). Further, the court's discretion in awarding "just" statutory damages is limited to adhering to the statutory minimum of $250.00 for each infringement found. *Id.* at 1102. It also seems apparent that plaintiffs' 19 works qualify as dramatic "motion picture photoplays" under section 1(d) of the Old Copyrights Act. *See Universal Pictures Co. Inc. v. Harold Lloyd Corp.,* 162 F.2d 354 (9th Cir.1947), and are therefore subject to the $250.00 to $5,000.00 statutory damage provisions of section 101 of the Old Act.

### Types of Infringements

The court has already determined that defendants have engaged in copying in-

fringement, 17 U.S.C. § 1(a), *Encyclopaedia Britannica Education Corp. v. Crooks, supra* at 1185, and thus, the remaining issues concern plaintiffs' claims of vending and performance infringements and the number of infringements committed by BOCES.

*Vending Infringement*

■ The copyright holders' exclusive rights to "vend" copyrighted works under the Old Copyrights Act, 17 U.S.C. § 1(a) is not defined by the statute, although courts have generally interpreted this right to mean the right to sell, and it implies a prohibition against unauthorized sales. *Platt & Munk Co., Inc. v. Playmore, Inc.,* 218 F.Supp. 267, 268 (S.D.N.Y.1962), *modified and aff'd,* 315 F.2d 847 (2d Cir.1963). Plaintiffs contend that BOCES' agreement with the schools to supply and make videotape copies constitutes a buyer-seller contract between BOCES and the school districts subscribing to the videotape service. Under plaintiffs' theory, BOCES "sold" videotape copies to the schools each time BOCES fulfilled a teacher request for a videotape copy or televised one of plaintiffs' copyrighted works via BOCES' cable television transmission system. Thus, every time one of these acts took place, plaintiffs claim that a vending infringement occurred.

BOCES maintains that its videotape operations were part of a program of shared education services and that these operations are more properly characterized as a service agreement. As a result, BOCES argues that plaintiffs have failed to demonstrate that BOCES actually sold any of the 19 copyrighted works in suit. Under defendants' theory, since BOCES never sold any of plaintiffs' copyrighted works, BOCES never engaged in vending and therefore has not committed any vending infringements.

■ In determining whether or not a contract is for the provision of services or sales, the court must look to the essence of the agreement to determine whether service predominates over any sales aspect. *North American Leisure Corp. v. A & B Duplicators Ltd.,* 468 F.2d 695, 697 (2d Cir. 1972); *Manes Organization, Inc. v. Standard Dying and Finishing Co.,* 472 F.Supp.

687, 690 n. 3 (S.D.N.Y.1973), "[w]here service predominates, and the transfer of personal property is only incidental to the transaction, it is a contract for work, labor and materials and not a sale." *William H. Wise & Co. v. Rand McNally & Co.,* 195 F.Supp. 621, 625 (S.D.N.Y.1961).

■ BOCES' organizational structure as a non-profit educational cooperative and its authority to conduct shared educational services under New York Education Law § 1950 has previously been noted. *Encyclopaedia Britannica Educational Corp. v. Crooks, supra* at 1159. Indeed, the scope and sophistication of BOCES' television and videotaping activities attest to its economic efficiency as a shared resource of the member school districts. BOCES' primary purpose in its off-the-air videotaping and television broadcasts, maintaining its library, and distributing its catalog was to provide videotapes to school teachers. The costs of the operation were primarily based on a per-pupil assessment for each school district, and tapes used for producing the videotape copies were supplied by the schools. As previously described, there was no limitation on the number of tapes which could be requested from BOCES, and no restrictions were placed on the use of the copy tape; teachers could keep and use the copy indefinitely. Additionally, none of the 19 works involved in the case was copied for any institutions other than the schools participating in BOCES' videotape program.

In a case involving the reproduction of audiotapes, *North American Leisure Corp. v. A & B Duplicators Ltd., supra,* the court determined that a service agreement existed when "NAL" employed "A & B" to reproduce copies from a master tape supplied by NAL. This is not strictly the situation here, as the schools did not provide BOCES with a master tape but a blank tape for copying purposes. Yet, the master tapes used by BOCES in this case were produced for the participating schools, and the cost of off-the-air videotaping was paid for by the participating schools. Taking all these factors into account, BOCES' relationship to the schools is more characteristic of

an agreement to provide labor, work, and material than a contract for the sale of videotapes to teachers. Under these circumstances, plaintiffs have not demonstrated that BOCES engaged in unauthorized sales of videotapes, and for these reasons, plaintiffs are not entitled to vending infringement damages in this case.

■ The court notes that under the New Copyrights Act, a copyright holder now has the right to "distribute" pursuant to 17 U.S.C. § 106(3), which may provide a copyright proprietor with greater rights than found in section 1(a) of the Old Act. Yet, this court is bound to apply the Old Act in its analysis and must "take the Copyright Act of 1909 as we find it." *Fortnightly Corp. v. United Artists Television, Inc.*, 392 U.S. 390, 401–02, 88 S.Ct. 2084, 2090, 20 L.Ed.2d 1176 (1968).

*Performance Infringements*

Plaintiffs request the court find that each time one of their 19 copyrighted works was copied by BOCES, it was also shown in a classroom and a public performance copyright infringement occurred in violation of 17 U.S.C. § 1(d). Plaintiffs also claim that each cable television broadcast of plaintiffs' copyrighted works by BOCES to school classrooms constitutes an additional performance infringement.

Defendants contend that there must be substantial evidence to support a claim of copyright infringement based on a public performance, *Baccaro v. Pisa,* 252 F.Supp. 900, 906 (S.D.N.Y.1966), and argue that plaintiffs have not demonstrated that the works which were videotaped were actually shown in school classrooms. Defendants further contend that if the videotape copies were shown in classrooms, these activities constitute private performances rather than public performances, as required for a finding of liability under the statute. Third, BOCES argues that its cable television transmissions of plaintiffs' works are not performance infringements under the Old Act. Finally, BOCES contends that because any performances of plaintiffs' works occurred in school classrooms, defendants

are only liable for performance infringements if they are found to be contributory or vicarious infringers.

Plaintiffs have demonstrated by a preponderance of the evidence that each videotape copied by BOCES was shown in a school classroom on at least one occasion and that each BOCES cable television transmission was received in at least one classroom. At trial, testimony of teachers revealed that a videotape copy produced by BOCES was generally played four to seven times before a classroom audience. It is also important to keep in mind that teachers filled out request forms for videotape copies; BOCES then produced and delivered these copies to the schools, and these copies were used for classroom purposes. *Encyclopaedia Britannica Educational Corp. v. Crooks, supra* at 1163. Additionally, there seems little reason for BOCES to broadcast plaintiffs' works via cable television if none of the classroom television sets was turned on to receive BOCES' broadcasts. In short, plaintiffs have proven their contention that each videotape copy was played at least once before a classroom audience and that each BOCES' cable television broadcast was viewed by a student audience in at least one of the subscribing schools.

■ Defendants' second argument that the performances were not "public" performances is without merit. Defendants contend that because New York State statutes place restrictions on the types of persons who can enter classrooms and attend classes, the classroom performances of plaintiffs' works were therefore private performances. Under the Old Act, unlimited public access was not required in order for a copyrighted work to be publicly performed, and a performance infringement could occur "where there is only a segment of the public involved, such as those people considered together because of common interest or purpose," *Lerner v. Schectman,* 228 F.Supp. 354, 355 (D.Minn.1964). Given the nature of the audiences involved here— public school students with a common purpose and interest in education—the court

finds that these works were all performed publicly within the meaning of the Old Act.

Concerning BOCES' cable television transmissions, defendants argue that BOCES only received television signals broadcast by WNED–TV and therefore cannot be considered to have "performed" plaintiffs' works when BOCES subsequently transmitted these programs to the schools. BOCES contends that following the trilogy of *Twentieth Century Music Corp. v. Aiken,* 422 U.S. 151, 95 S.Ct. 2040, 45 L.Ed.2d 84 (1975); *Teleprompter Corp. v. Columbia Broadcasting System, Inc.,* 415 U.S. 394, 94 S.Ct. 1129, 39 L.Ed.2d 415 (1974); and *Fortnightly Corp. v. United Artists Television, Inc., supra,* it is not a "performer" as a matter of law.

First, it should be noted that the United States Supreme Court's decision in *Twentieth Century Music Corp. v. Aiken, supra,* is factually distinguishable from the instant case. That case concerned a small fast-food shop in which radio programs were played by means of a radio receiver connected by four speakers in the shop's ceiling. Based upon these facts, the court found the shop to be exempt from the 1909 copyright laws.

 In *Fortnightly,* the Supreme Court determined that a broadcaster "performs" within the meaning of the Act because a broadcaster has the ability to select, procure, and propagate programs to the public by broadcast or rebroadcast. *Fortnightly Corp. v. United Artists Television, Inc., supra* 392 U.S. at 400, 88 S.Ct. at 2089. This determination was reaffirmed in *Teleprompter Corp. v. Columbia Broadcasting System, Inc., supra* 415 U.S. at 409–10, 94 S.Ct. at 1138. BOCES' Videotape Service conducted these very activities—selecting, procuring, and propagating plaintiffs' works by cable television rebroadcast to the schools. For these reasons, BOCES' cable television broadcasts of plaintiffs' works must be considered "public performances" under the Old Act.

## Number of Infringements

 There are two tests which, under appropriate circumstances, may be applied to limit the number of infringements committed by a copyright infringer. The "time test" refers to the proximity in time of repeated infringements in deciding whether to treat them as multiple infringements or one continuous infringement. The "heterogenity test" looks to whether the successive infringements are so similar in nature that they should be treated as one infringement. *Iowa State University Research Foundation, Inc. v. American Broadcasting Companies, Inc.,* 475 F.Supp. 78, 82 (S.D.N.Y.), aff'd, 621 F.2d 57 (2d Cir.1980).

 Plaintiffs contend that none of the copying infringements occurred so close in time as to constitute a single infringement. Concerning performance infringements, plaintiffs argue that each videotape copy produced by BOCES was sent to a different school at a different time and performed for a different group of students in a different classroom. Defendants have made no effort to prove that subsequent infringements were continuous or repetitious of the first under these tests. *Baccaro v. Pisa, supra* at 905. Accordingly, the court finds that separate copying infringements occurred when BOCES made five original master tapes of plaintiffs' works and created videotape copies of plaintiffs' works derived from all of the 19 master tapes within three years of the filing of the complaint, in violation of 17 U.S.C. § 1(a). The court further finds that one separate performance infringement occurred when each videotape copy was delivered to schools and shown in a classroom, and each time BOCES broadcast one of plaintiffs' copyrighted works via its closed circuit television system to a school classroom, in violation of 17 U.S.C. § 1(d).

## Liability of Defendants

 BOCES contends that the individual defendants cannot be directly or contributorily liable for any copyright infringements because they had no knowledge that their activities were in violation of the copyright laws. Additionally, because the defendants had no direct financial interests

in the infringing activities, defendants claim they cannot be held vicariously liable for these activities. *Gershwin Publishing Corp. v. Columbia Artists Management, Inc.*, 443 F.2d 1159, 1162 (2d Cir.1921).

A contributory infringer is one who, with knowledge of the infringing activity, induces, causes or materially contributes to the infringing conduct of another. *Id.* at 1162. In this respect,

> a defendant's mistake as to the legal consequences of his actions does not constitute an excuse for an infringement. It is only necessary that a copyright defendant have knowledge of the infringing *activity.*

*Universal City Studios v. Sony Corporation of America*, 659 F.2d at 975.

BOCES has engaged in direct infringement of plaintiffs' copyright in producing videotape copies of plaintiffs' works and by broadcasting these works to the schools via cable television. By supplying videotape copies to the schools, BOCES caused and materially contributed to the public performance of plaintiffs' copyrighted works in the school classrooms. The individual defendants in this action, the BOCES Videotape Service employees and the members of the Board of Cooperative Educational Services who were ultimately responsible for BOCES' videotape activities, either caused or materially contributed to these copyright infringements. "[A]s all united in infringing, all are responsible for the damages resulting from the infringement." *Gross v. Van Dyk Gravure Co.*, 230 F. 412 (2d Cir. 1916), *quoted in Gershwin Publishing Corp. v. Columbia Artists Management Co., supra* at 1162, n. 7. As a result all defendants are jointly and severally liable for costs and damages in this action, *MCA, Inc. v. Wilson, supra* at 186.

*Summary*

For the foregoing reasons, the court finds that (1) Defendants are not entitled to any future temporary off-the-air videotape use of plaintiffs' copyrighted works, and defendants' motion to modify the injunction entered June 21, 1982, is denied; (2) Plaintiffs' motion to reconsider their motion for attorneys' fee is denied; (3) Plaintiffs' motion for costs pursuant to 17 U.S.C. § 116 is granted; (4) Plaintiffs are entitled to statutory damages of $250.00 for each copying and performance infringement committed by BOCES, as described herein pursuant to 17 U.S.C. §§ 1(a) and 1(d).

Plaintiffs are directed to submit a proposed judgment and an affidavit of costs and the total number of copying and performance infringements committed by BOCES, applying the minimum statutory damage amount to this number. This affidavit shall be submitted to the court by March 21, 1983.

So ordered.