**Marvin FISHER d/b/a Marvin Music Company and Jack Segal, Plaintiffs-Appellants,**

v.

**Rick DEES, Atlantic Recording Corporation, Warner Communications, Inc., Defendants-Appellees.**

No. 85–5888.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted March 3, 1986.

Decided July 10, 1986.

Allen Hyman, Cohen & Luckenbacher, Los Angeles, Cal., for plaintiffs-appellants.

Peter Laird, Arrow, Edelstein & Gross, P.C., Los Angeles, Cal., for defendants-appellees.

Before WALLACE, SNEED, and KOZINSKI, Circuit Judges

SNEED, Circuit Judge:

The plaintiffs-appellants, Marvin Fisher and Jack Segal, appeal the district court's grant of summary judgment disposing of their federal claim for copyright infringement and their state-law claims for unfair competition, defamation, and product disparagement. We affirm.

## I.

## FACTUAL AND PROCEDURAL BACKGROUND

The plaintiffs-appellants, Marvin Fisher and Jack Segal (the composers), composed and own the copyright to the '50s standard "When Sunny Gets Blue" (the song). In late 1984, a law firm representing the defendants-appellees—disc jockey Rick Dees, Atlantic Recording Corp., and Warner Communications, Inc.[1]—contacted Fisher and requested permission to use part or all of the music to "When Sunny Gets Blue" in order to create a comedic and inoffensive version of the song. Fisher refused the request.

A few months later, Dees released a comedy record album (also issued in cassette form) called *Put It Where the Moon Don't Shine.* One cut on the album, entitled "When Sonny Sniffs Glue" (the parody), is an obvious take-off on the compos-

ers' song. The parody copies the first six of the song's thirty-eight bars of music—its recognizable main theme. In addition, it changes the original's opening lyrics— "When Sunny gets blue, her eyes get gray and cloudy, then the rain begins to fall" to "When Sonny sniffs glue, her eyes get red and bulgy, then her hair begins to fall." The parody runs for 29 seconds of the approximately forty minutes of material on Dees's album.

The composers brought an action in federal district court for copyright infringement, unfair competition, product disparagement, and defamation. The complaint included a proper demand for a jury trial. Before the commencement of discovery, both sides filed motions for summary judgment. The district court granted summary judgment in favor of Dees on all the composers' claims and the composers timely filed this appeal.

## II.

## DISCUSSION

The district court did not reveal the bases for its decision. Nonetheless, we may affirm if the record, viewed in the light most favorable to the composers, discloses no genuine issues of material fact and if Dees was entitled to judgment as a matter of law. *See Frederick S. Wyle Professional Corp. v. Texaco, Inc.,* 764 F.2d 604, 609 (9th Cir.1985).

### A. *Copyright Infringement*

 Dees urges affirmance of summary judgment on the claim for copyright infringement on the ground that the copying of the song for purposes of parody constituted a fair use.[2] We agree for the reasons discussed below.

---

**1.** All the defendants-appellees occupy the same position in this suit. For purposes of convenience, we shall henceforth refer only to defendant-appellee Rick Dees. What is said with respect to him applies equally to the others.

**2.** We reject out of hand the appellees' other two arguments for affirmance. The first one—that the first amendment gives parodists a blanket

protection from copyright infringement actions—has previously been rejected by this circuit. *See Walt Disney Productions v. Air Pirates,* 581 F.2d 751, 758–59 (9th Cir.1978) (holding that "'the idea-expression line'" separating infringement from non-infringement "'represents an acceptable definitional balance as between copyright and free speech interests'" (quoting

### 1. Overview of the fair-use doctrine

■ The fair-use doctrine was initially developed by courts as an equitable defense to copyright infringement. In effect, the doctrine creates a limited privilege in those other than the owner of a copyright to use the copyrighted material in a reasonable manner without the owner's consent. *See Harper & Row, Publishers, Inc. v. Nation Enterprises,* —— U.S. ——, 105 S.Ct. 2218, 2225, 85 L.Ed.2d 588 (1985) (citing H. Ball, *Law of Copyright and Literary Property* 260 (1944)). Congress codified this judge-made doctrine in section 107 of the Copyrights Act of 1976, Pub.L.No. 94–553, § 107, 90 Stat. 2541, 2546 (codified at 17 U.S.C. § 107 (1982)); but that enactment did not freeze the fair-use doctrine in stone. Rather, Congress expressly sought to preserve the doctrine's common law character, leaving courts "free to adapt the doctrine to particular situations on a case-by-case basis." 17 U.S.C. § 107 historical and revision notes (1982).

In restating the fair-use doctrine in section 107, Congress enumerated four nonexclusive factors for courts to consider:

(1) the purpose and character of the use, including whether such use is of a commercial nature or is for nonprofit educational purposes;

(2) the nature of the copyrighted work;

(3) the amount and substantiality of the portion used in relation to the copyrighted work as a whole; and

(4) the effect of the use upon the potential market for or value of the copyrighted work.

17 U.S.C. § 107 (1982). In addition, in the legislative notes accompanying the provision, Congress listed examples "of the sort of activities the courts might regard as fair use under the circumstances." *Id.* § 107 historical and revision notes (1982).

■ Congress named parody as one of these activities. Nonetheless, parody was not classified as a *presumptively* fair use. *See Harper & Row,* 105 S.Ct. at 2231. Each assertion of the "parody defense" must be considered individually, in light of the statutory factors, reason, experience, and, of course, the general principles developed in past cases.

There have been few cases in this circuit involving the parody branch of the fair-use doctrine. An early case, *Benny v. Loew's Inc.,* 239 F.2d 532 (9th Cir.1956), *aff'd by an equally divided Court,* 356 U.S. 43, 78 S.Ct. 667, 2 L.Ed.2d 583 (1958),[3] held that "'a parodized or burlesqued taking [was] to be treated no differently from any other [copyright] appropriation,'" *id.* at 537 (quoting lower court opinion, 131 F.Supp. 165, 183 (S.D.Cal.1955)). This decision was criticized by contemporary commentators, *see Berlin v. E.C. Publications, Inc.,* 329 F.2d 541, 544–45 (2d Cir.) (listing critiques), *cert. denied,* 379 U.S. 822, 85 S.Ct. 46, 13 L.Ed.2d 33 (1964), and was essentially repudiated by Congress's recognition of parody in the notes to the Copyrights Act of 1976. *See* discussion, *supra.* Accordingly, in *Walt Disney Productions v. Air Pirates,* 581 F.2d 751 (9th Cir.1978), *cert denied,* 439 U.S. 1132, 99 S.Ct. 1054, 59 L.Ed.2d 94 (1979), we gave the *Benny* opinion a nar-

*Sid & Marty Krofft Television Productions, Inc. v. McDonald's Corp.,* 562 F.2d 1157, 1170 (9th Cir.1977))), *cert. denied,* 439 U.S. 1132, 99 S.Ct. 1054, 59 L.Ed.2d 94 (1979). The second one—that the taking from the song was *de minimis* and thus not violative of the composers' copyright—is not supported by the facts. As a rule, a taking is considered *de minimis* only if it is so meager and fragmentary that the average audience would not recognize the appropriation. *See, e.g., Elsmere Music, Inc. v. National Broadcasting Co.,* 482 F.Supp. 741, 744 (S.D.N.Y.) (holding that a parodist's copying of four notes in a 100-measure composition was not merely a *de minimis* taking where that musical phrase was the heart of the composition), *aff'd per*

*curiam,* 623 F.2d 252 (2d Cir.1980). Here, the appropriation would be recognized instantly by anyone familiar with the original. As an analytical matter, moreover, it would seem contradictory to assert that copying for parodic purposes could be *de minimis.* A parody is successful only if the audience makes the connection between the original and its comic version. To "conjure up" the original work in the audience's mind, the parodist must appropriate a substantial enough portion of it to evoke recognition.

3. The case involved Jack Benny's television parody of the theatrical film *Gaslight.*

row interpretation and acknowledged that parody is a potential fair use subject to the multi-factor analysis codified in section 107. *See id.* at 756–58.

### 2. *Applying the fair-use test*

The composers advance five principal reasons why the parody before us is not a fair use: (1) the so-called parody is not actually a parody, or at least is not a parody of the composers' song; (2) Dees acted in bad faith; (3) Dees's use is commercial in nature; (4) the parody competes in the same market—record albums and tapes— as the song; and (5) the taking is more substantial than was reasonably necessary to "conjure up" the original in the mind of the audience.

In addition, the composers assert that the question of fair use is an issue for the jury. Even if the material facts pertaining to each factor in the fair-use test are undisputed, they maintain, the ultimate issue, fair use or no, is appropriate for determination on summary judgment only when no reasonable jury could have decided the question differently.

### (a) *Judge or jury?*

[6] We dispose of this last argument first, because it is completely undercut by the Supreme Court's recent decision in *Harper & Row, Publishers, Inc. v. Nation Enterprises,* —— U.S. ——, 105 S.Ct. 2218, 85 L.Ed.2d 588 (1985). The Court held in that case that "[f]air use is a mixed question of law and fact", *id.* at 2231, and that "[w]here the District Court has found facts sufficient to evaluate each of the statutory factors," an appellate court may conclude as a matter of law—without remanding for further factfinding—" 'that [the challenged use] do[es] not qualify as a fair use of the copyrighted work,' " *id.* (quoting *Pacific & Southern Co. v. Duncan,* 744 F.2d 1490, 1495 n. 8 (11th Cir.1984), *cert. denied,* —— U.S. ——, 105 S.Ct. 1867, 85 L.Ed.2d 161 (1985)).

No material historical facts are at issue in this case. The parties dispute only the ultimate conclusions to be drawn from the admitted facts. Because, under *Harper & Row,* these judgments are legal in nature, we can make them without usurping the function of the jury.

### (b) *Substantive fair-use issues*

We now turn to the composers' numerous substantive arguments as to why the fair-use defense is not available.

### (1) *The subject of the parody*

■ The composers assert that the parody, although it borrows from the original work, was not "directed" at the original. That is, a humorous or satiric work deserves protection under the fair-use doctrine only if the copied work is at least partly the target of the work in question. *See Walt Disney Productions v. Air Pirates,* 581 F.2d 751, 758 n. 15 (9th Cir.1978), *cert. denied,* 439 U.S. 1132, 99 S.Ct. 1054, 59 L.Ed.2d 94 (1979). Otherwise, there is no need to "conjure up" the original in the audience's mind and no justification for borrowing from it. *Id; accord MCA, Inc. v. Wilson,* 677 F.2d 180, 185 (2d Cir.1981).

We requested counsel to provide us with tapes of both Dees's parody and the original (as sung by Johnny Mathis). Although we have no illusions of musical expertise, it was clear to us that Dees's version was intended to poke fun at the composers' song, and at Mr. Mathis's rather singular vocal range. We reject the notion that the song was used merely as a vehicle to achieve a comedic objective unrelated to the song, its place and time. *Cf. id.* at 183–85 (purpose of saving the effort of composing original music); *infra* note 5.

### (2) *The propriety of Dees's conduct*

One theme running through the composers' briefs is that Dees's alleged bad conduct should bar his use of the equitable defense of fair use. The principle invoked is sound. Because " '[f]air use presupposes "good faith" and "fair dealing," ' " *Harper & Row,* 105 S.Ct. at 2232 (quoting *Time Inc. v. Bernard Geis Associates,* 293 F.Supp. 130, 146 (S.D.N.Y.1968)), courts

may weigh "the propriety of the defendant's conduct" in the equitable balance of a fair use determination, 3 M. Nimmer, *Nimmer on Copyright* § 13.05[A], at 13–72 to –73 (rev.ed. 1985).

▉ Nonetheless, we conclude that the composers have failed to identify any conduct of Dees that is sufficiently blameworthy. For example, Fisher and Segal fault Dees for using the song after Fisher expressly refused him permission to do so. In their view, this shows bad faith on Dees's part. We cannot agree. Parodists will seldom get permission from those whose works are parodied. Self-esteem is seldom strong enough to permit the granting of permission even in exchange for a reasonable fee. *See* Note, *The Parody Defense to Copyright Infringement: Productive Fair Use After* Betamax, 97 Harv. L.Rev. 1395, 1397 n. 12 (1984) [hereinafter cited as *Parody Defense* ]. The parody defense to copyright infringement exists precisely to make possible a use that generally cannot be bought. *See* 3 M. Nimmer, *supra,* § 13.05[C], at 13–89; Gordon, *Fair Use as Market Failure: A Structural and Economic Analysis of the* Betamax *Case and its Predecessors,* 82 Colum.L.Rev. 1600, 1633 & n. 177. Moreover, to consider Dees blameworthy because he asked permission would penalize him for this modest show of consideration. Even though such gestures are predictably futile, we refuse to discourage them.

▉ The composers also claim that the parody is immoral and thus unprotected by the fair-use doctrine. They cite the parody's irreverent references to drug addiction and its purported use of obscenities. Assuming without deciding that an obscene use is not a fair use, *but see Pillsbury Co. v. Milky Way Productions, Inc.,* 215 U.S. P.Q. 124, 131 & n. 10 (N.D.Ga.1981), we conclude, after listening to it, that the parody is innocuous—silly perhaps, but surely not obscene or immoral.

### (3) *The purpose and character of the use*

▉ The first fair-use factor section 107 directs courts to consider is "the purpose and character of the use, including whether such use is of a commercial nature or is for nonprofit educational purposes." 17 U.S.C. § 107(1) (1982). The parties agree that the parody is a commercial use of the song. This fact "tends to weigh against a finding of fair use," *Harper & Row,* 105 S.Ct. at 2231, because "every commercial use of copyrighted material is presumptively an unfair exploitation of the monopoly privilege that belongs to the owner of the copyright." *Sony Corp. v. Universal City Studios, Inc.,* 464 U.S. 417, 451, 104 S.Ct. 774, 793, 78 L.Ed.2d 574 (1984).

We recognize, however, that many parodies distributed commercially may be "more in the nature of an editorial or social commentary than ... an attempt to capitalize financially on the plaintiff's original work." *Milky Way Productions,* 215 U.S. P.Q. at 131 (footnote omitted). In such cases, of which this is one, the initial presumption need not be fatal to the defendant's cause. The defendant can rebut the presumption by convincing the court that the parody does not unfairly diminish the economic value of the original. *See id. &* n. 9.

### (4) *The economic effect of the use*

▉ Thus, we must turn our attention to the fourth factor in the fair-use analysis —"the effect of the use upon the potential market for or value of the copyrighted work," 17 U.S.C. § 107(4). This factor, not surprisingly, "is undoubtedly the single most important element of fair use." *Harper & Row,* 105 S.Ct. at 2234 (footnote omitted).

In assessing the economic effect of the parody, the parody's critical impact must be excluded. Through its critical function, a "parody may quite legitimately aim at garroting the original, destroying it commercially as well as artistically." B. Kaplan, *An Unhurried View of Copyright* 69 (1967). Copyright law is not designed to stifle critics. " 'Destructive' parodies play an important role in social and literary criti-

cism and thus merit protection even though they may discourage or discredit an original author." *Parody Defense*, 96 Harv.L. Rev. at 1411. Accordingly, the economic effect of a parody with which we are concerned is not its potential to destroy or diminish the market for the original—any bad review can have that effect—but rather whether it *fulfills the demand* for the original. Biting criticism suppresses demand; copyright infringement usurps it. Thus, infringement occurs when a parody supplants the original in markets the original is aimed at, or in which the original is, or has reasonable potential to become, commercially valuable. *See, e.g., Air Pirates*, 581 F.2d at 756; *Berlin v. E.C. Publications, Inc.*, 329 F.2d 541, 545 (2d Cir.), cert. denied, 379 U.S. 822, 85 S.Ct. 46, 13 L.Ed.2d 33 (1964); *Parody Defense, supra*, at 1409–11.

■ This is not a case in which commercial substitution is likely. "When Sunny Gets Blue" is "a lyrical song concerning or relating to a woman's feelings about lost love and her chance for ... happiness again." Appellants' Opening Brief at 3. By contrast, the parody is a 29-second recording concerning a woman who sniffs glue, which "ends with noise and laughter mixed into the song." *Id.* at 7. We do not believe that consumers desirous of hearing a romantic and nostalgic ballad such as the composers' song would be satisfied to purchase the parody instead. Nor are those fond of parody likely to consider "When Sunny Gets Blue" a source of satisfaction. The two works do not fulfill the same demand. Consequently, the parody has no cognizable economic effect on the original.

### (5) *The amount and substantiality of the taking*

This court has also consistently focused on the third fair-use factor—the amount and substantiality of the taking, 17 U.S.C. § 107(3). *See Air Pirates*, 581 F.2d at 756. Thus far, however, we have provided few concrete guidelines; we have merely sketched the outer boundaries of the inquiry. On the one hand, "substantial copying by a defendant, combined with the fact that the portion copied constituted a substantial part of the defendant's work," does not automatically preclude the fair use defense. *Id.* On the other hand, "copying that is virtually complete or almost verbatim" will not be protected. *Id.*

■ In *Air Pirates*, we ultimately based our analysis on the so-called "conjure up" test. *See Air Pirates*, 581 F.2d at 757 (citing *Berlin v. E.C. Publications, Inc.*, 329 F.2d 541 (2d Cir.), cert. denied, 379 U.S. 822, 85 S.Ct. 46, 13 L.Ed.2d 33 (1964), and *Columbia Pictures Corp. v. National Broadcasting Co.*, 137 F.Supp. 348 (S.D. Cal.1955)). As the *Air Pirates* opinion articulated it, the test asks "whether the parodist has appropriated a greater amount of the original work than is necessary to 'recall or conjure up' the object of his satire." *Id.* The composers interpret this test to limit the amount of permissible copying to that amount necessary to evoke only *initial* recognition in the listener.[4]

We disagree with this rigid view. As the Second Circuit stated in *Elsmere Music, Inc. v. National Broadcasting Co.*, 623 F.2d 252 (2d Cir.1980) (per curiam):

[T]he concept of "conjuring up" an original came into the copyright law not as a limitation on how much of an original

---

4. Relying on this construction of the test, the composers introduced the affidavit of a musicologist, Irwin Coster, who declared that Dees could have conjured up the song by using only its first five notes and the words "when Sunny gets blue." Declaration of Irwin Coster in Support of Plaintiffs' Motion for Partial Summary Judgment at 4, *reprinted in* Excerpt of the Clerk's Record, item 16, at 4. In response, Dees submitted an affidavit declaring his conviction that "we took the smallest amount possible from 'When Sunny Gets Blue' in order to parody it."

Declaration of Rick Dees Offered in Opposition to Motion for Partial Summary Judgment and Permanent Injunction or in the Alternative a Preliminary Injunction at 3, *reprinted in* Excerpt of the Clerk's Record, item 9, at 3. We regard both these affidavits as irrelevant. Although the actual amount taken is a factual issue susceptible of proof, it is a question of law whether the taking is excessive under the circumstances. *See Harper & Row*, 105 S.Ct. at 2231.

may be used, but as a recognition that a parody frequently needs to be more than a fleeting evocation of an original in order to make its humorous point. A parody is entitled at least to "conjure up" the original.

*Id.* at 253 n. 1 (citation omitted). *Air Pirates* does not compel a different view. In that case—which concerned the near-verbatim copying of Disney characters in the defendants' underground comic book—we concluded that the defendants "took more than was necessary to place firmly in the reader's mind the parodied work and those specific attributes that [were] to be satirized," 581 F.2d at 758. We did not set a fixed limit on copying, but merely expressed our judgment that that particular parody could easily have been accomplished through more restricted means.

We singled out three considerations that we thought important in determining whether a taking is excessive under the circumstances—the degree of public recognition of the original work, the ease of conjuring up the original work in the chosen medium, and the focus of the parody. *See Air Pirates*, 581 F.2d at 757–58. Because the Disney characters were familiar and graphics was a relatively easy medium for parody, we concluded that close copying was impermissible. *See id.* But we expressly noted that media other than the graphic arts might justify greater leeway. We observed: "[W]hen the medium involved is a comic book, a recognizable caricature is not difficult to draw, so that an alternative that involves less copying is more likely to be available than if a speech, for instance, is parodied." *Id.* at 758.

The unavailabity of viable alternatives is evident in the present case. Like a speech, a song is difficult to parody effectively without exact or near-exact copying. If the would-be parodist varies the music or meter of the original substantially, it simply will not be recognizable to the general audience. This "special need for accuracy," provides some license for "closer" parody. *See id.* To be sure, that license is not limitless: the parodist's desire to make the best parody must be "balanced against the rights of the copyright owner in his original expressions."[5] *Id.* We think the balance tips in the parodists' favor here. In view of the parody's medium, its purposes, and its brevity, it takes no more from the original than is necessary to accomplish reasonably its parodic purpose.

---

**5.** Two music-related parody cases from the Second Circuit, *MCA, Inc. v. Wilson*, 677 F.2d 180 (2d Cir.1981) and *Elsmere Music, Inc. v. National Broadcasting Co.*, 482 F.Supp. 741 (S.D.N.Y.), *aff'd per curiam*, 623 F.2d 252 (2d Cir.1980), provide a useful contrast for purposes of assessing the amount and substantiality of various takings. In *MCA, Inc. v. Wilson*, the court held the doctrine of fair use inapplicable in the case of a song called "Cunnilingus Champion of Company C," which closely tracked the music and meter of the 40's standard, "Boogie Woogie Bugle Boy of Company B." The composers of "Champion," which was created for performance in the off-Broadway musical *Let My People Come*, admitted that the song was not originally conceived as a parody of "Bugle Boy." Rather, they had copied the original because it was "'immediately identifiable as something happy and joyous and it brought back a certain period in our history when we felt that way.'" 677 F.2d at 184 (quoting uncited trial record). Central to the court's holding was the determination that "Champion" was *not* a parody of "Bugle Boy"; in copying "Bugle Boy" almost verbatim, the composers' purpose was simply to reap the advantages of a well-known tune and short-cut the rigors of composing original music. *See id.* at 183–85.

*Elsmere Music, Inc. v. National Broadcasting Co.*, 482 F.Supp. 741 (S.D.N.Y.), *aff'd per curiam*, 623 F.2d 252 (2d Cir.1980), concerned a Saturday Night Live parody of the song "I Love New York." The SNL version, entitled "I Love Sodom," was "sung *a cappella* by a chorus line of three SNL regulars to the tune of 'I Love New York,' with the words 'I Love Sodom' repeated three times." *Id.* at 743. Having first determined that the SNL song was indeed a parody of the original, the court went on to hold that the parodist's copying and repetition of a four-note phrase from the original—which it found to be the "heart of the composition," *id.* at 744—was not an excessive taking. In support of its decision, the court observed that (1) the repetition of the copied material served both to ensure viewer recognition and to satirize the frequent broadcasting of the original; and (2) the parodic use of the copied material lasted only 18 seconds, *see id.* at 747. The instant case is much closer to the facts of *Elsmere* than to those of *MCA*.

### (6) *Summation*

We conclude that "When Sonny Sniffs Glue" is a parody deserving of fair-use protection as a matter of law. Thus, we affirm the district court's grant of summary judgment on the copyright claim.

### B. *State Law Claims*

#### 1. *Unfair competition*

Dees's album, *Put It Where the Moon Don't Shine,* contains six musical numbers including the parody. The album cover's credits list Dees as the author of five of the songs, but no credits appear in connection with "When Sonny Sniffs Glue." Fisher and Segal assert that, in so designing the cover, Dees implicity represented that the music, words, and title of the parody were also authored by him. Thus, Fisher and Segal conclude, Dees engaged in unfair competition by deceiving the public as to the true source of the parody.

█ Under California law, a plaintiff claiming unfair competition must "prove a likelihood of confusion by purchasers as to source." *Air Pirates,* 581 F.2d at 760. Yet this confusion must be of a specific kind: the public must be misled into thinking that the defendant's product is actually the plaintiff's. In other words, the defendant must be guilty of "passing off" his product as the plaintiff's. *See Sinatra v. Goodyear Tire & Rubber Co.,* 435 F.2d 711, 714 (9th Cir.1970), *cert. denied,* 402 U.S. 906 (1971). *See generally* W.P. Keeton, *Prosser and Keeton on Torts* § 130, at 1015 (5th ed. lawyer's ed. 1984) (discussing tort of "passing off"). Here, there is no "passing off." In fact, the composers allege the opposite situation—namely that Dees sells their work as if it were his.

█ Assuming *arguendo* that the false claiming of authorship constitutes a separate tort under California law, such a cause of action is nevertheless preempted by federal law. In *Compco Corp. v. Day-Bright Lighting, Inc.,* 376 U.S. 234, 84 S.Ct. 779, 11 L.Ed.2d 669 (1964), and *Sears, Roebuck & Co. v. Stiffel Co.,* 376 U.S. 225, 84 S.Ct. 784, 11 L.Ed.2d 661 (1964), the Supreme Court determined that the Supremacy Clause of the United States Constitution, U.S. Const., art. VI, precludes the states from protecting types of intellectual property that are already covered by the federal copyright or patent laws. *Sears* and *Compco* "ma[k]e it very clear that just as a state could not encroach upon the federal patent laws directly it could not do so indirectly under the guise of enforcing its laws against unfair competition where those laws would clash with the federal objectives." *Sinatra v. Goodyear Tire & Rubber Co.,* 435 F.2d 711, 717 (9th Cir.1970), *cert. denied,* 402 U.S. 906, 91 S.Ct. 1376, 28 L.Ed.2d 646 (1971). The same applies to the copyright statute. Accordingly, the kind of misappropriation alleged by the composers can be redressed, if at all, only under federal law.

#### 2. *Defamation/Disparagement*

█ Finally, the composers claim that Dees defamed them and disparaged their song by associating the song "with obscene, indecent and offensive words" and by causing it "to be reproduced, distributed and performed for and to the public in an offensive manner." *See* Excerpt of the Clerk's Record at 8–9 (reprinting the composers' third and fourth causes of action). A recent California case, *Polygram Records, Inc. v. Superior Court,* 170 Cal. App.3d 543, 216 Cal.Rptr. 252 (1985), persuades us that the composers cannot prevail. The court in *Polygram,* relying in part on the guarantees of free speech in the state constitution, held that defamation and product disparagement claims against comedic works may be dismissed summarily if the material the plaintiff complains of "is not fairly susceptible of a defamatory meaning." 170 Cal.App.3d at 551, 216 Cal. Rptr. at 256. Because Dees's parody cannot reasonably be understood in a defamatory sense by those who hear it, the composers' claims for defamation and disparagement must fail.

AFFIRMED.