### ACUFF–ROSE MUSIC, INC.

v.

**Luther R. CAMPBELL a/k/a Luke Skyywalker, Christopher Wongwon a/k/a Fresh Kid Ice, Mark Ross a/k/a Brother Marquis, Davis Hobbs a/k/a Mr. Mixx, p/k/a The 2 Live Crew and Luke Skyywalker Records.**

#### No. 3:90–0524.

United States District Court, M.D. Tennessee, Nashville Division.

Jan. 14, 1991.

Alan L. Marx, E. Andrew Norwood, Elizabeth B. Marney, F. Casey Del Casino, King & Ballow, Nashville, Tenn., for plaintiff.

Alan Mark Turk, Sanford R. Ross, Nashville, for defendants.

## MEMORANDUM

WISEMAN, Chief Judge.

This case involves a claim by Acuff–Rose Music, Inc. ("Acuff–Rose") for copyright infringement of its song, "Oh, Pretty Woman." Acuff–Rose has named as defendants the members of the rap group 2 Live Crew and Luke Skyywalker Records. The plaintiff contends that the defendants unfairly are trying to cash in on the popularity of "Oh, Pretty Woman."

For the reasons stated below, the Court finds that no genuine issue of material fact exists regarding the allegation of copyright infringement. This claim is dismissed pursuant to Fed.R.Civ.P. 56. The plaintiff's pendent tort claims are preempted by 17 U.S.C. § 301.

### I.

This copyright case involves Roy Orbison's musical hit "Oh, Pretty Woman" as recorded by 2 Live Crew. Roy Orbison and William Dees co-authored "Oh, Pretty Woman" in 1964 and assigned their rights in the song to Acuff–Rose Music the same year. "Oh, Pretty Woman" was copyrighted by Acuff–Rose in 1964. Since then the song has continued to generate profits for Acuff–Rose.

On July 5, 1989, 2 Live Crew's manager, Linda Fine, wrote Gary Teifer of Opryland U.S.A., Inc. and Acuff–Rose. Fine informed Teifer that 2 Live Crew was going to parody "Oh, Pretty Woman," that Orbison and Dees would receive full credit as owners and authors, and that 2 Live Crew would pay Acuff–Rose the statutorily required rate for use of the song. Teifer responded on July 17, denying the license request and informing Fine that "we cannot permit the use of a parody of 'Oh, Pretty Woman.'"

On July 15, 1989, 2 Live Crew released its version of "Oh, Pretty Woman" on record albums, tapes and compact discs, entitled "As Clean As They Wanna Be." The release, called "Pretty Woman," is on side B, sandwiched between "Me So Horny" and "My Seven Bizzos." Both the compact disc cover and compact disc itself acknowledge Orbison and Dees as the authors of "Oh, Pretty Woman" and Acuff–Rose as the publisher.

Almost one year later, on June 18, 1990, Acuff–Rose sued 2 Live Crew and their record company, Luke Skyywalker Records, for copyright infringement, interference with business relations, and interference with prospective business advantage for the performance and distribution of a copy of "Oh, Pretty Woman." Acuff–Rose contends that the lyrics of "Oh, Pret-ty Woman" as sung by 2 Live Crew "are not consistent with good taste or would disparage the future value of the copyright." Moreover, Acuff–Rose charges that 2 Live Crew's music is substantially similar in melody to "Oh, Pretty Woman" and the lyrics of the first verse are substantially similar to that of the original version. In response, defendants have moved for summary judgment. They argue that "Pretty Woman" is a parody that constitutes fair use under 17 U.S.C. § 107 of the Copyright Act, 17 U.S.C. §§ 101–914 (1982). They also argue that the two tort claims are preempted by 17 U.S.C. § 301. Pursuant to Fed.R.Civ.P. 67, 2 Live Crew has deposited with the Court the $13,867 it maintains is due to Acuff–Rose for use of its song as required by the Copyright Act. This decision does not address whether that sum reflects adequate compliance with the Act.

The resolution of this motion presents two questions for the Court to address: first, whether "Pretty Woman" constitutes fair use of copyrighted material pursuant to 17 U.S.C. § 107; and second, whether the plaintiff's state law claims are preempted by federal copyright law.

### II.

#### A. Standard of review

Summary judgment is appropriate only when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986); *Street v. J.C. Bradford & Co.,* 886 F.2d 1472, 1476–80 (6th Cir.1989). The party seeking summary judgment bears the initial burden of showing the absence of a genuine issue of material fact. *Celotex,* 477 U.S. at 323, 106 S.Ct. at 2552. In responding to a motion for summary judgment, the nonmoving party cannot rest on its pleadings, but must present some "specific facts showing that there is a genuine issue for trial." *Id.* at 324, 106 S.Ct. at 2553.

The Supreme Court concluded in *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986), that a dispute about a material fact is "genuine" within the meaning of Fed.R. Civ.P. 56 only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." 477 U.S. at 248, 106 S.Ct. at 2510. "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient." *Id.* at 252, 106 S.Ct. at 2512. Of course, the court is to construe the evidence and all inferences to be drawn from it in the light most favorable to the nonmoving party. *Id.* at 255, 106 S.Ct. at 2513–14.

### B. Fair Use

To foster the widespread dissemination of ideas, the copyright system is "designed to assure contributors to the store of knowledge a fair return for their labors." *Harper & Row Publishers, Inc. v. Nation Enterprises*, 471 U.S. 539, 546, 105 S.Ct. 2218, 2223, 85 L.Ed.2d 588 (1985). *See Sony Corp. v. Universal City Studios, Inc.*, 464 U.S. 417, 429, 104 S.Ct. 774, 782, 78 L.Ed.2d 574 (1984) (purpose of copyright is to create incentives for creative effort). Notwithstanding the monopoly granted to the owner, fair use has been defined as the "privilege in others than the owner of a copyright to use the copyrighted material in a reasonable manner without his consent." *Harper & Row*, 471 U.S. at 549, 105 S.Ct. at 2224 (quoting H. Ball, *Law of Copyright and Literary Property*, 260 (1944)).

Section 107 of the Copyright Act instructs courts to balance the following four factors:

In determining whether the use made of a work in any particular case is a fair use the factors to be considered shall include—

(1) the purpose and character of the use, including whether such use is of a commercial nature or is for nonprofit educational purposes;

(2) the nature of the copyrighted work;

(3) the amount and substantiality of the portion used in relation to the copyrighted work as a whole; and

(4) the effect of the use upon the potential market for or value of the copyrighted work.

At a minimum, courts have indicated that evaluation of these four factors is required. But they are not exclusive. *Harper & Row*, 471 U.S. at 560, 105 S.Ct. at 2230; *Pacific & Southern Co., Inc., v. Duncan*, 744 F.2d 1490, 1495 n. 7 (11th Cir.1984), *cert. denied*, 471 U.S. 1004, 105 S.Ct. 1867, 85 L.Ed.2d 161 (1985).

Before the court may move to the merits of the statutory fair use analysis, it must consider whether this case is suitable for summary judgment. Plaintiffs allege that a number of material issues of fact remain. "Fair use is a mixed question of law and fact." *Harper & Row*, 471 U.S. at 560, 105 S.Ct. at 2230 (quoting *Pacific & Southern Co.*, 744 F.2d at 1495 n. 8). "Where the district court has found facts sufficient to evaluate each of the statutory factors, an appellate court 'need not remand for further factfinding ... [but] may conclude as a matter of law that [the challenged use] do[es] not qualify as a fair use of the copyright work.'" *Id.* Based on the evidence presented by the parties in this case, including copies of the songs, correspondence and affidavits, whether defendant's parody constitutes fair use under 17 U.S.C. § 107 is a question of law for the Court to determine. *See Fisher v. Dees*, 794 F.2d 432, 436 (9th Cir.1986) (although discovery not commenced, since "parties dispute only the ultimate conclusions to be drawn from the admitted facts ... we can make them without usurping the function of the jury").

Since no genuine material issues of fact remain, the Court will proceed to address the four factors cited by § 107.[1]

---

1. No published Sixth Circuit opinion addresses this type of copyright infringement question. *Compare Pro Arts, Inc. v. Hustler Magazine, Inc.*, 787 F.2d 592 (6th Cir.1986) (per curiam) (un-

published text in Westlaw). Accordingly, this Court relies on opinions from other circuits, notably the Second and Ninth Circuits.

■ 1. *Purpose and Character of the Use.* The first factor the Court must consider is the purpose and character of the use, including whether such use is of a commercial nature or is for nonprofit educational purposes. As examples of fair use, the preamble of § 107 lists "criticism, comment, news reporting, teaching ... scholarship, [and] ... research." 17 U.S.C. § 107. Congress has listed parody as one of those activities that might qualify for the fair use exception. *See* H.R.Rep. No. 1476, 94th Cong., 2d Sess., 65 (1976), *reprinted in* 1976 U.S.Code Cong. & Admin. News 5659, 5680. Obviously, 2 Live Crew's song is included on a commercially distributed record album sold for the purpose of making a profit.

Although 2 Live Crew's primary goal in releasing "As Clean As They Wanna Be" is to sell its music, that finding "does not necessarily negate a fair use determination...." 3 M. Nimmer, *Nimmer on Copyright*, § 13.05[A] at 13–70 (1990). In *Harper & Row*, the Court stated that a commercial purpose merely "tends to weigh against a finding of fair use." *Harper & Row*, 471 U.S. at 562, 105 S.Ct. at 2231. "The crux of the profit/nonprofit distinction is not whether the sole motive of the use is monetary gain but whether the user stands to profit from exploitation of the copyrighted material without paying the customary price." *Id.*

Importantly for the purposes of this case, it is plain that 2 Live Crew also desired to parody the original version of "Oh, Pretty Woman." [2] In copyright law, courts have long recognized that satirical expression is "deserving of substantial freedom—both as entertainment and as a form of social and literary criticism." *Berlin v. E.C. Publications, Inc.*, 329 F.2d

541, 545 (2nd Cir.), *cert. denied*, 379 U.S. 822, 85 S.Ct. 46, 13 L.Ed.2d 33 (1964). Including parody within the fair use doctrine has been recognized as "a means of fostering the creativity protected by the copyright law." *Warner Bros., Inc., v. American Broadcasting Companies*, 720 F.2d 231, 242 (2d Cir.1983).

Many parodies "distributed commercially may be 'more in the nature of an editorial or social commentary than ... an attempt to capitalize financially on the plaintiff's original work.'" *Fisher v. Dees*, 794 F.2d 432, 437 (9th Cir.1986) (quoting *Pillsbury Co. v. Milky Way Productions, Inc.*, 215 U.S.P.Q. 124, 131 (N.D.Ga.1981)); *Cf. Original Appalachian Artworks v. Topps Chewing Gum*, 642 F.Supp. 1031, 1034 (N.D.Ga.1986) (holding that primary purpose behind defendant's parody "is not an effort to make a social comment but is an attempt to make money"). As discussed in Section II.B.4, *infra*, the defendant may rebut the presumption of commercial use as described in *Harper & Row* by convincing the court that the parody does not unfairly diminish the economic value of the original. *Fisher*, 794 F.2d at 437.

Acuff–Rose argues that the song is not a parody. It contends that the 2 Live Crew's version does not comment on the copyrighted work because the former is "primarily about the physical attributes of women" and the latter is "primarily about loneliness."

But based on a comparison of the two songs and the affidavits provided to the Court, it is apparent that 2 Live Crew has created a comic parody of "Oh, Pretty Woman." [3] The theme, content and style of the new version are different than the original. In his affidavit, Luther Campbell, also known as Luke Skyywalker, states

**2.** *Dallas Cowboys Cheerleaders v. Pussycat Cinema*, 467 F.Supp. 366, 376 (S.D.N.Y.), *aff'd*, 604 F.2d 200 (2d Cir.1979), defines parody as "a work in which the language or style of another work is closely imitated or mimicked for comic effect or ridicule." *See* Dorsen, *Satiric Appropriation and the Law of Libel, Trademark and Copyright: Remedies Without Wrongs*, 65 B.U.L. Rev. 923, 924 (1985) (Parody "is a potent form of social commentary which attempts to expose the foibles and follies of society in direct, biting,

critical, and often harsh language—tempered by humor.").

**3.** Gerry Teifer's comment in his July 17, 1990 letter to 2 Live Crew that the new version of "Oh, Pretty Woman" is a parody does not necessarily equate with the specific legal definition of parody. Teifer says in his affidavit that he never heard the 2 Live Crew version prior to denying their licensing request.

that his version of "Oh, Pretty Woman" was written as a parody designed "through comic lyrics, to satirize the original work...." He acknowledges that he purposefully copied selected music and lyrics from "Oh, Pretty Woman" as a device to help listeners identify the parody with the original version. Acuff–Rose may not like it, and 2 Live Crew may not have created the best parody of the original, but nonetheless the facts convincingly demonstrate that it is a parody.

2 Live Crew's lyrics provide the strongest evidence of its attempt to parody "Oh, Pretty Woman." Although the parody starts out with the same lyrics as the original, it quickly degenerates into a play on words, substituting predictable lyrics with shocking ones.[4] The first lyrical hint that something is amiss comes when a loud, barking laugh immediately follows the first two words of the parody, "pretty woman." (Laughter follows later in the song too.) The purpose of the laughter is soon explained as the ensuing choruses respectively depict a big, hairy woman, a bald-headed woman, and a "two-timin'" woman. Roy Orbison's pretty woman becomes akin to "Cousin It," the ugly, bit character featured on the TV series "The Addams Family." The physical attributes of the subject woman deviate from a pleasing image of femininity to bald-headed, hairy and generally repugnant. To complete the thematic twist, at the end of the parody the "two-timin'" woman turns out to be pregnant. The phrase, "the baby ain't mine" is completely inconsistent with the tone and story of the romantic original. In sum, 2 Live Crew is an anti-establishment rap group and this song derisively demonstrates how bland and banal the Orbison song seems to them. *See MCA, Inc. v. Wilson,* 677 F.2d 180, 185 (2d Cir.1981) (noting that "if the copyrighted [work] is not at least in part an object of the parody, there is no need to conjure it up"); Defendant's Affidavits of Oscar Brand and William Krasilovsky.

The parody also employs a number of musical devices that exaggerate the original and help to create a comic effect. 2 Live Crew uses the same drum beat and bass riff to start its song. But unlike the original, only five seconds into the song and immediately following the bass riff, 2 Live Crew inserts a heavily distorted "scraper," indicating a significant disparity in style. The same scraper is used four seconds later to reiterate that message and subsequently at the end of the song as well. Also at the beginning of the parody, the first soloist sings in a different key than the chorus. In addition, four times during the parody, 2 Live Crew repeats Orbison's bass riff over and over again, double the number of times on the original, until the riff begins to sound like annoying scratch on a record.

Although the Court has determined that 2 Live Crew's version parodies the original, a finding of a parody does not necessarily equate with a finding of fair use. *Fisher,* 794 F.2d at 435. "Parody was not classified as a presumptively fair use.... Each assertion of the 'parody defense' must be considered individually, in light of the statutory facts, reason, experience, and of course, the general principles developed in past cases." *Id.* As a result, the Court will examine the remaining three statutory elements of § 107.

2. *Nature of the Copyrighted Work.* The second factor is the nature of the copyrighted work. In addressing this element, "the court may consider, among other things, whether the work was creative, imaginative, and original, ... and whether it represented a substantial investment of time and labor made in anticipation of financial return." *MCA,* 677 F.2d at 182 (citation omitted). *See also Harper & Row,* 471 U.S. at 563, 105 S.Ct. at 2232; 3 M. Nimmer, *Nimmer on Copyright,* § 13.05[A] at 13–78. Since "Oh, Pretty Woman" is a published work, with creative

---

**4.** It is unclear exactly what Acuff–Rose means when it complains in its response to the Motion for Summary Judgment that the parody "dirt[ies]" the copyright. 2 Live Crew's version is neither obscene nor pornographic. Even if

the work included pornographic references, that does not necessarily preclude a finding of fair use. *Pillsbury Co. v. Milky Way Productions, Inc.,* 215 U.S.P.Q. 124, 131·(N.D.Ga.1981).

roots, this factor weighs in favor of the plaintiff.

■ 3. *Amount of Quotation.* The third factor to address is the amount and substantiality of the portion used in relation to the copyrighted work as a whole. This element contains quantitative and qualitative elements and as a result the amount of protected material that a copier may take under the rubric of fair use will vary from case to case.

For instance, fair use may not allow a person to copy the most qualitatively "valuable" portion of the work, even if such portion constitutes a relatively small amount of the entire protected material. *See, e.g., Harper & Row,* 471 U.S. at 565–66, 105 S.Ct. at 2233–34. In *Harper & Row* the Supreme Court noted that a taking that is "insubstantial with respect to the infringing work" does not necessarily mean that fair use applies. *Id.,* 471 U.S. at 565, 105 S.Ct. at 2233. By contrast, "the copying of an entire work does not preclude fair use *per se.*" *Hustler Magazine, Inc., v. Moral Majority Inc.,* 796 F.2d 1148, 1155 (9th Cir.1986).

Acuff–Rose argues that the portions taken from "Oh, Pretty Woman" are both qualitatively and quantitatively significant. According to the plaintiff's musicologist, Earl V. Spielman, the two works are substantially similar. The copying includes the name of the song and key lyrics. The 2 Live Crew version also includes the same guitar refrain, opening drum beat and melody and chorus. Affidavit of Earl V. Spielman. Since the original song is so popular, Acuff–Rose contends that 2 Live Crew does not need to copy much of the original in order to conjure up its memory.

But the conclusion drawn by the plaintiffs does not address whether 2 Live Crew used more of the copyrighted work than was necessary to recall or conjure up "Oh, Pretty Woman." *See, e.g., Fisher,* 794 F.2d at 438 n. 4 (holding that affidavits conflicting on question of substantiality are irrelevant given that issue of extent of taking is a question of law). No one disputes that 2 Live Crew copied "Oh, Pretty Woman." But the question about substantial similarity cannot be divorced from the purpose for which the defendant's work will be used.

It is a settled aspect of copyright law that parodists have the right to conjure up the object of the parody. In *Berlin,* 329 F.2d 541, the court stated that where "the parody has neither the intent nor the effect of fulfilling the demand for the original, and where the parodist does not appropriate a greater amount of the original work than is necessary to 'recall or conjure up' the object of his satire, a finding of infringement would be improper." *Id.* at 545. *See Elsmere Music, Inc. v. National Broadcasting Co.,* 623 F.2d 252, 253 (2d Cir.1980) ("parody frequently needs to be more than a fleeting evocation of an original in order to make its humorous point"). Indeed, the effectiveness of a parody inherently depends on its ability to copy the original work.

Several courts that have balanced the conflict between the rights of the copyright owner against the goals of the parodist have concluded that parodies of songs require more leeway than other types of parodies. The Ninth Circuit reasoned in *Fisher* that resolution of the substantiality question depends on the medium of the respective works. In *Fisher,* the plaintiffs sued for copyright infringement of a song entitled "When Sunny Gets Blue." As in this case, the plaintiffs previously had denied defendant Dees' request to record a parody of the original. Nonetheless, Dees released his parody song "When Sonny Sniffs Glue," copying the musical theme of the original while changing the lyrics. *Id.* at 434. The *Fisher* court observed that:

> Like a speech, a song is difficult to parody effectively without exact or near-exact copying. If the would-be parodist varies the music or meter of the original substantially, it simply will not be recognizable to the general audience. This "special need for accuracy," provides some license for "closer" parody.... To be sure, that license is not limitless: the parodist's desire to make the best parody must be "balanced against the rights of

the copyright owner in this original expression."

*Fisher*, 794 F.2d at 439 (citations omitted). Likewise, in *Berlin*, the Second Circuit affirmed the application of the fair use defense in a case where the defendants, publishers of "Mad Magazine," had published a volume which parodied twenty-five of the plaintiff's song lyrics in same meter. "The disparities in theme, content and style between the original lyrics and the alleged infringements could hardly be greater." *Berlin*, 329 F.2d at 545. *Cf. Walt Disney Productions v. Air Pirates*, 581 F.2d 751, 758 (9th Cir.1978) (holding that fair use defense cannot apply where the copying is virtually complete or almost verbatim and that parodist may only use what is necessary to conjure up the original), *cert. denied*, 439 U.S. 1132, 99 S.Ct. 1054, 59 L.Ed.2d 94 (1979); *MCA*, 677 F.2d at 185 (holding that where defendant's song "Cunnilingus Champion of Co. C" did not parody plaintiff's song "Boogie Woogie Bugle Boy of Company B," the amount copied by defendants from the original song was so substantial as to be unfairly excessive).

In this case, 2 Live Crew has not mimicked so much of "Oh, Pretty Woman" that it runs afoul of the substantiality factor. Notable aspects of the original song are plainly present in 2 Live Crew's version but, unlike *Air Pirates*, this is not a case of virtually complete or verbatim copying. Rather this case falls in the realm of parodies envisioned by *Fisher* and *Berlin*. In view of the fact that the medium is a song, its purpose is parody, and the relative brevity of the copying, it appropriates no more from the original than is necessary to accomplish reasonably its parodic purpose. *Fisher*, 794 F.2d at 439.

■ 4. *Effect on the Market.* Finally, as discussed in the first statutory factor under § 107, the Court must examine the effect of the use upon the potential market for or value of the copyrighted work. The Supreme Court has referred to the fourth factor as "the single most important element of fair use." *Harper & Row*, 471 U.S. at 566, 105 S.Ct. at 2233. *Accord Triangle Publications, Inc. v. Knight-*

*Ridder Newspapers, Inc.*, 626 F.2d 1171, 1175 (5th Cir.1980).

The Supreme Court reasoned that this element should be weighed most heavily since "a use that has no demonstrable effect upon the potential market for, or the value of, the copyrighted work need not be prohibited in order to protect the author's incentive to create." *Sony Corp.*, 464 U.S. at 450, 104 S.Ct. at 792–93. As a result, fair use, "when properly applied, is limited to copying by others which does not materially impair the marketability of the work which is copied." *Harper & Row*, 471 U.S. at 566–67, 105 S.Ct. at 2233–34 (quoting 1 Nimmer, *Nimmer on Copyright*, § 1.10[D] at 1–87). The Court emphasized that to deny a finding of fair use, one need show only that if the defendant's use " 'should become widespread, it would adversely affect the *potential* market for the copyrighted work.' " *Harper & Row*, 471 U.S. at 568, 105 S.Ct. at 2234 (quoting *Sony Corp.*, 464 U.S. at 451, 104 S.Ct. at 793).

Neither *Harper & Row* nor *Sony* involved a parody. But in *Fisher*, which involved a copyright infringement claim and a parody defense, and the Ninth Circuit held that the parody "When Sonny Sniffs Glue" had no cognizable economic impact on the original song, "When Sunny Gets Blue." It concluded that commercial substitution was unlikely, remarking that:

"When Sunny Get Blue" is a "lyrical song concerning or relating to a woman's feelings about lost love and her chance for ... happiness again." By contrast, the parody is a 29–second recording concerning a woman who sniffs glue, which "ends with noise and laughter mixed into the song." We do not believe that consumers desirous of hearing a romantic and nostalgic ballad such the composers' song would be satisfied to purchase the parody instead. Nor are those fond of parody likely to consider "When Sunny Gets Blue" a source of satisfaction. The two works do not fulfill the same demand.

*Fisher*, 794 F.2d at 438. *See also Consumers Union of United States, Inc. v. General Signal Corp.*, 724 F.2d 1044, 1051 (2d

Cir.1983) ("Where the copy does not compete in any way with the original ... concern is absent."), *cert. denied,* 469 U.S. 823, 105 S.Ct. 100, 83 L.Ed.2d 45 (1984); *Elsmere Music, Inc. v. National Broadcasting Company, Inc.,* 482 F.Supp. 741, 746–47 (S.D.N.Y.), *aff'd,* 623 F.2d 252 (2d Cir.1980) (although defendants appropriated the heart of plaintiff's song, since the copying was a parody it could not fulfill demand for the original version). *Cf. New Line Cinema Corp. v. Bertlesman Music Group,* 693 F.Supp. 1517, 1528 (S.D.N.Y. 1988) (parody defense rejected where defendant's rap video would be likely to harm the value of carefully planned derivative use of plaintiff's movie in the rap video market).

With respect to the parody "Pretty Woman," this fourth factor favors the defendants. As in *Fisher,* it is extremely unlikely that 2 Live Crew's song could adversely affect the market for the original. The intended audience for the two songs is entirely different. The odds of a record collector seeking the original composition who would also purchase the 2 Live Crew version are remote. Defendant's Affidavit of William Krasilovsky. "The group's popularity is intense among the disaffected, definitely not the audience for the Orbison song. I cannot see how it can affect the sales or popularity of the Orbison song, except to stimulate interest in the original." Defendant's Affidavit of Oscar Brand. Second, while Acuff–Rose is not required to prove damages, *Marcus v. Rowley,* 695 F.2d 1171, 1177 (9th Cir.1983), it has not produced convincing evidence that any harm to any existing or potential market has occurred. *Cf. Harper & Row,* 471 U.S. at 567, 105 S.Ct. at 2234 (where trial court found an actual effect on the market). On a motion for summary judgment, the nonmoving party cannot rest on its pleadings, but must present some "specific facts showing that there is a genuine issue for trial." *Celotex Corp.,* 477 U.S. at 324, 106 S.Ct. at 2553. Acuff–Rose must adduce more than a scintilla of evidence to overcome the motion. *Street v. J.C. Bradford & Co.,* 886 F.2d 1472, 1479 (6th Cir. 1989).

Plaintiffs attempt to focus on their possible future losses and mount two different arguments. First, they contend that 2 Live Crew's parody prevents them from marketing future derivative works, such as a rap version or even their own "burlesque" of the Orbison original. Second, they argue that "Oh, Pretty Woman" "has been tarnished by being associated with these lyrics and with 2 Live Crew" and that will result in the loss of future licensing arrangements.

Since 2 Live Crew's version of "Oh, Pretty Woman" is a parody, that release has not prevented Acuff–Rose from recording whatever version of the original it desires. Likewise, plaintiff's argument that it would be prevented from releasing a parody of their work is meritless. In a world where copyright monopoly stretched to that great extent, parodies would be unlikely ever to be approved by the original author. *See* 3 Nimmer, *Nimmer on Copyright,* § 13.05[C] at 13–90.12; *Fisher,* 794 F.2d at 437 ("Parodists will seldom get permission from those whose works are parodied.... The parody defense to copyright infringement exists precisely to make possible a use that generally cannot be bought.")

Examining the latter argument, several courts have discounted attempts by copyright holders to claim infringement based on the impact of alleged criticism. "In assessing the economic effect of the parody, the parody's critical impact must be excluded. Through its critical function, a 'parody may quite legitimately aim at garroting the original, destroying it commercially as well as artistically'.... Biting criticism suppresses demand; copyright infringement usurps it." *Fisher,* 794 F.2d at 437–38 (citations omitted). *Also see Consumers Union,* 724 F.2d at 1050–51; *Pillsbury Co. v. Milky Way Productions, Inc.,* 215 U.S.P.Q. 124, 131 (N.D.Ga.1981).

### III.

Having applied § 107's four factors, the Court finds that they weigh in favor of the defendants. 2 Live Crew's "Pretty Woman" is a parody. Its purpose is to poke fun at the original version of "Oh,

Pretty Woman." In so doing, the parody copies from the original. Notwithstanding the copying needed to conjure up the original song, for the foregoing reasons the Court concludes that 2 Live Crew's use of the original copyrighted song is protected fair use.

## IV.

Defendants also argue that plaintiff's state law claims for interference with business relations and interference with prospective business advantage for the performance and distribution of a copy of "Oh, Pretty Woman" are preempted by § 301 of the Copyright Act. 17 U.S.C. § 301 describes the extent to which the Copyright Act preempts state law causes of action based on copyright. It provides in pertinent part:

(a) On and after January 1, 1978 all legal or equitable rights that are equivalent to any of the exclusive rights within the general scope of copyright as specified by section 106 in works of authorship that are fixed in a tangible medium of expression and come within the subject matter of copyright as specified by sections 102 and 103 ... are governed exclusively by this title. Thereafter no person is entitled to any such right or equivalent right in any such work under the common law or statutes of any State.

(b) Nothing in this title annuls or limits any rights or remedies under the common law or statutes of any State with respect to—

(3) activities violating legal or equitable rights that are not equivalent to any of the exclusive rights within the general

scope of copyright as specified by section 106.

A two-part test determines when § 301(a) preempts a common law tort claim. "First, the work in which the right is asserted must be fixed in tangible form and come within the subject matter of copyright as specified in [17 U.S.C. § 102]. Second, the right must be equivalent to any of the rights specified in [17 U.S.C. § 106]." *Baltimore Orioles v. Major League Baseball Players Assn.*, 805 F.2d 663, 674 (7th Cir.1986), *cert. denied*, 480 U.S. 941, 107 S.Ct. 1593, 94 L.Ed.2d 782 (1987). *See also Harper & Row Publishers, Inc., v. National Enterprises*, 723 F.2d 195, 199–200 (2d Cir.1983), *rev'd on other grounds*, 471 U.S. 539, 105 S.Ct. 2218, 85 L.Ed.2d 588 (1985).

■ In this case, Acuff–Rose focuses on the second factor of the § 301 analysis. It argues that the tort claim is not "equivalent to" the rights set forth in § 106. A right under state law is equivalent if it creates or destroys any of the rights contained in Copyright Act. *Id.* at 676; *Allied Artists Pictures Corp. v. Rhodes*, 679 F.2d 656, 662–63 (6th Cir.1982), *aff'g in pertinent part*, 496 F.Supp. 408, 443–44 (S.D. Ohio 1980). Section 106 of the Copyright Act grants plaintiffs the exclusive right to reproduce, distribute, perform and display the copyrighted work, "Oh, Pretty Woman." [5]

■ With respect to Acuff–Rose's claim for interference with business relationships, Tennessee common law provides that "[O]ne's business is entitled to protection 'from tortious interference by a third person who, in interfering therewith, is not acting in the exercise of some right, such

---

5. Section 106 of the Copyright Act provides: Subject to sections 107 through 118, the owner of copyright under this title has the exclusive rights to do and to authorize any of the following:

    (1) to reproduce the copyright work in copies or phonorecords;

    (2) to prepare derivative works based upon the copyrighted work;

    (3) to distribute copies or phonorecords of the copyrighted work to the public by sale or other transfer of ownership, or by rental, lease, or lending;

    (4) in the case of literary, musical, dramatic, or choreographic works, pantomimes, and motion pictures and other audiovisual works, to perform the copyrighted work publicly; and

    (5) in the case of literary, musical, dramatic, or choreographic works, pantomimes, and pictorial, graphic or sculptural works, including the individual images of a motion picture or other audiovisual work, to display the copyright work publicly.

as the right to compete for business.'" *Lann v. Third National Bank*, 198 Tenn. 70, 72, 277 S.W.2d 439, 440 (1955). To prevail on such a claim, the plaintiff must show malice, ill will, or wrongful motive. *Id. See also Testerman v. Tragesser*, 789 S.W.2d 553, 556–57 (Tenn.App.1989) (citing *Lann*). Plaintiff alleges that it has lost benefits flowing from its copyright monopoly. Like the copyright infringement claim, violation of the state law claim rests on a finding of unauthorized copying. "In both cases, it is the act of unauthorized publication which causes the violation. The enjoyment of benefits from derivative use is so intimately bound up with the right itself that it could not possibly be deemed a separate element...." *Harper & Row*, 723 F.2d at 201. In addition, the fact that the state law cause of action requires proof of intent does not necessarily preclude a finding of preemption. The Second Circuit concluded in *Harper & Row* that:

> [T]he fact that cross-appellants pleaded additional elements of awareness and intentional interference, not part of a copyright infringement claim goes merely to the scope of the right; it does not establish qualitatively different conduct on the part of the infringing party, nor a fundamental nonequivalence between the state and federal rights implicated.

*Id.* Since the claim is equivalent to rights established by § 106 the cause of action is preempted by federal law. *See also Gemcraft Homes, Inc. v. Sumurdy*, 688 F.Supp. 289, 295 (E.D.Tex.1988) (holding that plaintiff's claim for tortious interference with contractual relations is preempted by § 301); *Pacific & Southern Co., Inc. v. Satellite Broadcast Networks, Inc.*, 694 F.Supp. 1565, 1572–73 (N.D.Ga.1988) (same); *McNabb Bennett & Associates, Inc. v. Terp Meyers Architects*, No. 85–C–8792, 1986 WL 7051 (N.D.Ill. June 19, 1986) (same).

▌ The question about whether § 301 preempts any Tennessee tort for interference with prospective business advantage is trickier. The plaintiff has not cited any Tennessee case in which recovery was allowed for wrongful interference not involving a breach of contract, and it appears that Tennessee has not developed any significant body of law in this area. *Warde v. Kaiser*, 887 F.2d 97, 103 n. 1 (6th Cir.1989) (citing *Cesnik v. Chrysler Corp.*, 490 F.Supp. 859, 874 (M.D.Tenn.1980) (Wiseman, J.)).

Even assuming arguendo that interference with prospective business advantage constitutes a separate tort under Tennessee law, such a cause of action is nevertheless preempted by federal law. As the Court found for the interference with business relationship claim, this second tort is equivalent to the rights specified in 17 U.S.C. § 106 and thus is preempted by federal law as well. *See, e.g., Motown Record Corp. v. George A. Hormel & Co.*, 657 F.Supp. 1236, 1240 (C.D.Cal.1987) (holding that plaintiff's claim for tortious interference with prospective business advantage is preempted by § 301).

### ORDER

For the reasons stated in the accompanying Memorandum, the Motion for Summary Judgment made by defendants 2 Live Crew and Luke Skyywalker Records against plaintiff Acuff–Rose Music, Inc. is granted pursuant to Rule 56 of the Federal Rules of Civil Procedure. 2 Live Crew's rendition of "Pretty Woman" is a parody of the original "Oh, Pretty Woman" that constitutes fair use under 17 U.S.C. § 107 of the Copyright Act, 17 U.S.C. §§ 101–914 (1982). *See, e.g., Fisher v. Dees*, 794 F.2d 432, 436 (9th Cir. 1986).

The two Tennessee state law claims for interference with business relations and interference with prospective business advantage for the performance and distribution of a copy of "Oh, Pretty Woman" are preempted by 17 U.S.C. § 301.

IT IS SO ORDERED.